UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JONATHAN LEE THOMAS,
 Plaintiff,

vs.             Case No.: 3:22cv7427/LAC/ZCB

LESLIE HALL, et al.,
 Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983. (Docs. 1, 5). The operative complaint is Plaintiff's second amended complaint (Doc. 21). Defendants Hall and Marie have moved to dismiss (Docs. 26, 27), and Plaintiff has responded in opposition (Docs. 36, 37). For the reasons below, Defendants' motions to dismiss should be denied.

### I. Background

Plaintiff's allegations involve conduct that took place while he was incarcerated at the Escambia County Jail. He names two Defendants, kitchen manager Leslie Hall and kitchen staff member Miss Marie, in their individual capacities only. The following description of events is based on the allegations set forth in Plaintiff's second amended

1

complaint, which the Court must accept as true at this stage in the litigation.

Plaintiff alleges that he is a member of the Hebrew Faith, and his religion requires him to take part in the "Commanded Passover and Feast of Unleavened Bread" (hereinafter "the Feast") that lasted from April 15, 2022 to April 23, 2022. (Doc. 21 at 6). Plaintiff alleges he received approval to participate in the Feast from "the appropriate overseers of the jail" and had a meeting with the jail's chaplain (a non-party) to discuss the importance of consuming "Matza," or unleavened bread, during the Feast. (*Id.* at 7). Plaintiff alleges his faith required him to refrain from consuming (or even being in the presence of) leavened bread during the Feast. (*Id.*).

The chaplain then made arrangements with Defendant Hall to serve Plaintiff meals that complied with the Feast's requirements. (*Id.*). The three individuals had a meeting in which they all agreed that the product Defendant Hall had on hand at the time would not be suitable for Plaintiff's Feast requirements. (*Id.*). It appears the chaplain and

Defendant Hall then received approval from Commander Nash, a non-party, to purchase Matza for Plaintiff. (*Id.*).

Plaintiff alleges Defendant Hall acquired the Matza and agreed that Plaintiff required twenty-two slices, one for each meal during the Feast. (*Id.* at 8). Plaintiff further alleges that he discussed with the chaplain and Defendant Hall the importance of not having any leavening agent on Plaintiff's tray during the Feast. (*Id.*). Plaintiff alleges that on April 13, 2022, the chaplain confirmed with Plaintiff that Defendant Hall had the correct number of pieces of Matza and notified Plaintiff that his special religious diet was noted in the computer system for all staff and kitchen workers. (*Id.*). On the following day, the chaplain confirmed one final time with Defendant Hall "how important th[e] Feast is" before the chaplain departed the jail to take a few days of leave. (*Id.*).

Plaintiff alleges the first meal of the Feast on April 15, 2022 was "perfect." (*Id.* at 9). On April 16 and 17, 2022, however, Plaintiff alleges he was consistently provided with leavened bread. So, he refused the trays and explained to the officer in charge about his special religious diet. (*Id.*). The officer then verified the information in the computer and

3

informed the kitchen staff that the meal needed to be corrected. (*Id.*). On April 18, 2022, Plaintiff alleges that he was served leavened bread, and he complained to the officer, who informed the kitchen staff of the issue. (*Id.*). Plaintiff alleges he received a Feast-compliant tray about "an hour or so later." (*Id.*).

Plaintiff alleges that on April 19, 2022, "the same problem occurred," but this time, when the officer contacted the kitchen, Defendant Marie allegedly responded with "tell [Plaintiff] he is not special and needs to realize he's in jail! He either eats the tray I sent him or nothing at all." (*Id.* at 10). The officer contacted her again, as well as his own supervisor, but Plaintiff alleges Defendant Marie's response remained the same. (*Id.*). Plaintiff alleges that he "was refused [his] religious diet that evening" and "forced to break [his] covenant with Yahweh [his] Elohim, thus invoking irreparable damage." (*Id.*).

Plaintiff alleges that on April 20, 2022, his "religious diet was simply disregarded in retaliation f[or his] complaint." (*Id.* at 11). Plaintiff alleges he received no Matza at the evening meal, and his tray was served with both leavened bread and leavening agents. (*Id.*).

4

Plaintiff alleges that he complained to the officer who notified the kitchen, "but to no avail." (*Id.*). Plaintiff alleges he waited three hours before receiving peanut butter on leavened bread, which he refused. (*Id.*). The officer confirmed that he had informed the kitchen staff about Plaintiff's Feast requirements, but the person in charge of the kitchen that day—who Plaintiff does not appear to name as a Defendant—said "there was nothing he c[ould] do" because "the kitchen workers had gone home for the day." (*Id.*).[1]

Plaintiff alleges that on April 21, 2022, he received a visit from the chaplain who "informed [Plaintiff] that he was made aware of the problems [Plaintiff] was having with [his] meals," and that he was going to address it. (*Id.* at 12). But Plaintiff alleges the chaplain's attempt was unsuccessful, and Plaintiff had the same problems with his meals on April 22 and 23, 2022. (*Id.*). Plaintiff again alleges that he was forced to break his religious covenant, which caused "irreparable damage" to this faith. (*Id.*).

---

[1] Plaintiff alleges he grieved the events of this day as well, and his grievance was marked sustained and "supported by a preponderance of evidence." (*Id.* at 12).

5

Plaintiff's second amended complaint raises freedom of religion and retaliation claims under the First Amendment, as well as an equal protection claim under the Fourteenth Amendment. (*Id.* at 14).

Defendants move to dismiss Plaintiff's allegations against them for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 26, 27). In short, Defendants contend Plaintiff has failed to plead the elements of a *Monell* claim and an Eighth Amendment claim. (*See id.*). Defendants further contend Plaintiff failed to exhaust administrative remedies, and that Plaintiff's claims against Defendants are "viewed as claims against Aramark," Defendants' employer. (*See id.*).

In response, Plaintiff contends that he is neither asserting *Monell* liability nor Eighth Amendment claims. (Docs. 36, 37 at 1-2). Plaintiff further contends he was not required to follow the Florida Department of Corrections' (FDOC) grievance procedures because the alleged violations did not occur within a FDOC institution. (*Id.* at 3-5). Plaintiff also asserts that Defendants' argument that his claims should be treated as claims against Aramark is without merit because Plaintiff has not named Defendants in their official capacities. (*Id.* at 5).

6

## II. Discussion

### A. The Rule 12(b)(6) standard.

Rule 12(b)(6) provides that a complaint should be dismissed if it fails to state a claim on which relief can be granted. When evaluating a Rule 12(b)(6) motion to dismiss, a court must accept the complaint's allegations as true and construe the facts in the light most favorable to the plaintiff. *Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). To survive dismissal, "[a] plaintiff must plausibly allege all the elements of the claim for relief. Conclusory allegations and legal conclusions are not sufficient; the plaintiff[] must state a claim to relief that is plausible on its face." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The pleadings of *pro se* litigants are to be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). "Despite the leniency afforded pro se plaintiffs, the district court does not have license to

rewrite a deficient pleading." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (citation omitted).

**B. Defendants' motions to dismiss lack merit.**

Defendants first argue that Plaintiff has not properly pled an Eighth Amendment claim (Docs. 26, 27 at 8-15). But Plaintiff has not brought an Eighth Amendment claim. Rather, as the operative complaint makes clear, Plaintiff has brought freedom of religion and retaliation claims under the First Amendment, as well as an equal protection claim under the Fourteenth Amendment. (Doc. 21 at 7). Nowhere in his operative complaint does Plaintiff mention the Eighth Amendment. The Court is puzzled as to why Defendants are making this argument given the lack of any Eighth Amendment claim in the second amended complaint. Thus, the Court will reject Defendants' argument that Plaintiff has not plausibly stated a claim for relief under the Eighth Amendment because Plaintiff has asserted no such claim.

Additionally, Defendants contend Plaintiff has not plausibly alleged a *Monell* liability claim. This argument also lacks merit. The *Monell* framework is used to analyze claims seeking municipal liability

under § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Under *Monell*, a civil rights plaintiff bringing a § 1983 claim against a municipal entity must show that (1) "his constitutional rights were violated"; (2) the municipality "had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A lawsuit against a municipal employee in his or her official capacity is viewed as a lawsuit against the municipality itself and, therefore, is subject to the *Monell* standard. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (explaining that official capacity suits "against municipal officers are therefore, in actuality, suits directly against the city the officer represents"). On the other hand, a lawsuit against a municipal employee in her individual capacity for actions the employee allegedly took herself[2] is not a suit against the municipality and, therefore, is not subject to the *Monell* liability standard. *See Gatchel v. Henry Cnty, Ga.*, No. 1:22-cv-03284,

---

[2] Plaintiff is seeking to hold Defendants responsible for alleged actions they individually took. He is not asserting a *respondeat superior* claim.

2023 WL 6216529, at *4 (N.D. Ga. June 20, 2023) (stating that because the defendants "have been sued only in their individual capacities, *Monell* is not a proper vehicle for establishing Section 1983 liability"); *see also Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 467 (7th Cir. 2001) (recognizing that if a plaintiff sues "the individual defendants in their individual capacities . . . they would not face the *Monell* issue"); *Harasz v. Katz*, 239 F. Supp. 3d 461, 505 (D. Conn. 2017) (cleaned up) ("*Monell* does not apply to state officials or individuals sued in their individual capacity").

Here, Plaintiff names individual Defendants in their individual capacities (Doc. 21 at 2-3) for conduct they allegedly personally undertook. Plaintiff is not suing a municipality. Nor is he suing a private entity that was performing a municipal function. Nor is he suing a municipal employee in his or her official capacity. Thus, the *Monell* standard does not apply to Plaintiff's claims. As such, Plaintiff was not required to plead facts sufficient to satisfy the *Monell* standard.

Finally, Defendants argument that Plaintiff has failed to exhaust administrative remedies is misplaced for two reasons. First, Defendants

argue that "Plaintiff has not provided any evidence of informal or formal complaints." (Docs. 26, 27 at 16). But at this stage of litigation, it is not Plaintiff's burden to come forth with evidence proving exhaustion. Instead, "the defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Indeed, exhaustion is an affirmative defense to be raised by Defendants and "not a pleading requirement" of Plaintiff. *See Brooks v. Powell*, 706 F. App'x 965, 968 (11th Cir. 2017). Therefore, there is no merit to Defendants' argument that dismissal is warranted because Plaintiff has failed to come forward in his complaint with evidence of exhaustion. *See Turner*, 541 F.3d at 1082.

Second, Defendants incorrectly argue that Plaintiff was required to exhaust under the administrative grievance procedure that has been promulgated by the FDOC. (*See* Docs. 26, 27 at 16) (citing Fla. Admin. Code 33-103.005-103.007). That is so because Plaintiff's allegations involve conduct that occurred at the Escambia County Jail—a county facility that is not operated by the FDOC. Therefore, Plaintiff would have

11

been required to exhaust his administrative remedies under the Escambia County Jail's policy, as opposed to the FDOC's policy that is cited by Defendants.[3]  *See, e.g., Thomas v. Escambia Cnty. Jail*, No. 3:21cv1906, 2022 WL 848361, at *5 (N.D. Fla. Mar. 4, 2022) (analyzing whether an inmate at the Escambia County Jail exhausted his administrative remedies under the jail's grievance procedure).  Because Defendants have failed to establish (or even argue) that Plaintiff failed to exhaust under the *applicable* grievance procedure (i.e., the Escambia County Jail grievance procedure), their exhaustion claim lacks merit.[4]

### III.  Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that the motions to dismiss filed by Defendants Hall and Leslie (Docs. 26, 27) be **DENIED**.

---

[3]  *See*  https://myescambia.com/our-services/corrections/community-detention, Escambia County Jail Inmate Handbook (setting forth the administrative grievance process for inmates in the county jail).

[4] Given that the Escambia County Jail's administrative grievance process does not require that an inmate file an appeal with the FDOC Secretary, the Court can easily reject Defendants argument that Plaintiff did not exhaust because he "failed to properly file an appeal with the Office of the [FDOC] Secretary." (*See* Doc. 26 at 17).  No such appeal was required.

At Pensacola, Florida this 27th day of November 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of this Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.